IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TUFF WRAP INSTALLATIONS INC. | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 11-2576 |
| v. | : | |
| | : | |
| CLEANWRAP, INC. et al. | : | |
| Defendants | : | |

## OPINION

**Slomsky, J.**                                                                 June 29, 2011

## I.  INTRODUCTION

Defendant Mark Nemelka is a former employee of Plaintiff Tuff Wrap Installations, Inc. (hereinafter "Plaintiff" or "Tuff Wrap").  He was fired by Tuff Wrap and thereafter began to work for a competing business, Defendant Cleanwrap, Inc. (hereinafter "Defendant Cleanwrap").  As a result of Defendant Nemelka's activity at Defendant Cleanwrap, Plaintiff filed a Complaint on April 14, 2011 against Defendants alleging various state claims and a violation of the Lanham Act, 15 U.S.C. § 1051.[1]  The claims relate to an Employee Confidentiality, Non-Competition and Non-Solicitation Agreement between Plaintiff Tuff Wrap and Defendant Nemelka.  In addition to the Complaint, Plaintiff filed a Motion requesting a preliminary injunction, seeking to enjoin Defendant Cleanwrap from using or disclosing any confidential information that it may have

---

[1] The claims are:  Count One: Breach of Employment Contract against Defendant Nemelka;  Count Two: Tortious Interference with Employment Contract against Defendant Cleanwrap;  Count Three: Tortious Interference with Existing Contract against Defendants Nemelka and Cleanwrap;  Count Four: Tortious Interference with Prospective Contracts against Defendants Nemelka and Cleanwrap;  Count Five: Equity Action for Unjust Enrichment against Defendants Nemelka and Cleanwrap;  Count Six: Pennsylvania Uniform Trade Secrets Act against Defendants Nemelka and Cleanwrap;  Count Seven: Lanham Act, 15 U.S.C. § 1051 against Defendant Cleanwrap.

1

received from Defendant Nemelka, and to enjoin Defendant Nemelka from working for Cleanwrap or any other Tuff Wrap competitor until the conclusion of the litigation. Tuff Wrap also sought to enjoin Defendants from soliciting or contacting any clients or customers of Tuff Wrap.

On June 10, 2011, the Court held a hearing on the Motion for a preliminary injunction. After considering the testimony and exhibits offered by the parties and their filings in this case, and for reasons that follow, the Court will grant Plaintiff's Motion.

## II.     FACTUAL BACKGROUND

Plaintiff Tuff Wrap is a corporation engaged in the business of interior protection. (Doc. No. 1 ¶ 2.) Interior protection services are designed to protect the interior of a building from dust and debris during a construction project. (Id. ¶ 13.) In 2002, David Campbell started Tuff Wrap, (id. ¶ 12), which maintained confidential information, including lists of existing and potential customers (id. ¶ 18). Tuff Wrap required employees with access to confidential information to sign a confidentiality agreement. (Id. ¶ 20.)

In May 2007, Tuff Wrap hired Mark Nemelka ("Defendant Nemelka"). (Id. ¶ 21.) On May 21, 2007, Defendant Nemelka began to work at Tuff Wrap in Harleysvile, Pennsylvania. (See id. ¶¶ 21-23.) On May 21 or 22, 2007, Defendant Nemelka signed a Tuff Wrap Employee Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Agreement"). (See id. ¶ 23, Exhibit ("Ex.") A.).[2] The Agreement provides, in pertinent part:

---

[2]     Although the Complaint states that Defendant Nemelka was hired as a sales representative for Tuff Wrap (see Doc. No. 1 ¶ 21), the testimony adduced at the hearing on June 10, 2011 is not clear on what duties Defendant Nemelka was hired to perform. It is clear, however, that Defendant Nemelka signed the Agreement and was given access to confidential information.

> . . . Employee will not, either during the term of his/her employment or after termination of such employment (regardless of the reason for or the party causing termination), utilize for his/her personal advantage or profit . . . furnish or divulge . . . any such Confidential Information . . .
>
> During the term of Employee's employment by Employer and for the period of one-year after the termination of such employment . . . Employee shall not . . . contact, solicit or do business with any Customer/Client, or Prospective Customer Client of Employer . . . .

(Doc. No. 1, Ex. A at Sections 1(a) and 3.) As consideration for the Agreement, Tuff Wrap gave Defendant Nemelka "one additional week of vacation annually," which extended the annual vacation time described in the Tuff Wrap Employee Handbook.[3] (See id. at 1; June 9, 2011, Hearing on Preliminary Injunction Ex. ("Hr'g Ex.") P1.) In exchange, as noted above, Defendant Nemelka agreed to refrain from soliciting business from or doing business with any of Tuff Wrap's current or prospective customers for a period of one year after leaving the employ of Tuff Wrap. (Doc. No. 1 ¶ 25.) Further, Defendant Nemelka was prohibited from disclosing any confidential information belonging to Tuff Wrap and from retaining any confidential information acquired during his employment, including customer lists. (Id. ¶¶ 26, 32.)

Defendant Nemelka initially worked for Tuff Wrap in Pennsylvania. (Id. ¶ 28.) He was re-located to Southern California and then to Chicago, Illinois. (Id. ¶ 30.) On September 1, 2010, after three years and three months of employment, Defendant Nemelka was terminated by Tuff Wrap. (Id. ¶ 31.)

On September 20, 2010, in response to a request from Defendant Nemelka for his personnel documents and monies owed to him, counsel for Tuff Wrap sent a letter to counsel for

---

[3] The Tuff Wrap Employee Handbook provides that full-time employees are entitled to vacation time of "[o]ne work week per year after one full-time year of employment" and "[t]wo work weeks per year after three full-time years of employment." (Hr'g Ex. P1.)

Defendant Nemelka[4] that included Tuff Wrap's intention to "enforce [the Agreement] that [Nemelka] signed." (Id. ¶ 34, Ex. B.) The letter also confirmed that Tuff Wrap owed Defendant Nemelka money for one work-week of vacation time because he had used two of the three weeks allotted to him in his third full year. (Id. at Ex. B.) A check would be mailed to Defendant Nemelka to compensate him for the week of unused vacation. (Id.)

On September 22, 2010, Defendant Nemelka's wife, Dawn Nemelka, founded Cleanwrap Inc., a Utah corporation providing interior protection services similar to the protection services of Tuff Wrap. (Id. ¶ 37.) Defendant Nemelka began working for Defendant Cleanwrap in September 2010. (Id. ¶ 38.) On September 29, 2010, counsel for Tuff Wrap sent another letter to Defendant Nemelka's attorney, this time stating that Tuff Wrap was aware that Defendant Nemelka was working for Defendant Cleanwrap and that Tuff Wrap intended to enforce its rights under the Agreement. (Doc. No. 1 ¶ 41, Ex. C.) Employees of Tuff Wrap discovered that Defendant Cleanwrap was bidding on jobs or doing business with companies that Defendants Nemelka and Cleanwrap knew to be Tuff Wrap clients. (Doc. No. 1 ¶ 42.) Moreover, Defendants Nemelka and Cleanwrap have used the Tuff Wrap name as an internet search engine keyword, which drives Tuff Wrap customers to Cleanwrap's website. (Doc. No. 1 ¶ 46.)

In support of their competing positions, each party presented a witnesses at the June 10, 2011 hearing before this Court. Their testimony is summarized below. The Court finds that the testimony of the witness for Plaintiff is credible and supports the need for a preliminary injunction in this case.

---

[4] Defendant Nemelka is currently represented by Barnard Quinn, Esquire. Mr. Quinn did not represent Defendant Nemelka at the time the letter was sent. It was sent to his prior counsel, Thomas Luetkmeyer, Esquire.

4

A.     Plaintiff's Witness: David Campbell

David Campbell testified that he is President of Tuff Wrap. (Transcript of Hearing, June 11, 2011 ("Hr'g Tr.") at 13:12-13.) Tuff Wrap provides dust and debris protection to the interior of a building by usually installing on the ceiling or roof of a building a temporary plastic reinforced barrier between a construction site and the plant operation. (Id. at 13:14-19.) Campbell first worked with interior protection in 1999 when a friend expressed a need to protect the interior of his plant during construction. (Id. at 13:22–14:13.) Over the next four or five years, Campbell developed "the Tuff Wrap," which is a method of applying plastic material to the site without making any holes in the material. This method ensures that the plastic remains securely suspended above the site. (Id.) The plastic used is a "reinforced poly" that Campbell developed. (Id. at 14:21–15:2.)

Tuff Wrap maintains certain confidential information and takes measures to protect it. Tuff Wrap considers its method of hanging plastic to be confidential. The actual hanging is performed above eyelevel, indoors, after business hours, and is not performed in public view. (Id. at 16:16–17:7.) To protect this confidential information, Tuff Wrap requires that newly hired employees in the position of installer to sign a non-competition and confidentiality agreement before they are taught how to perform the installation of the plastic. (Id. at 15:31-21.) Moreover, Tuff Wrap's program to estimate the price of a job has been developed over ten years and is based upon confidential historical data collected by Tuff Wrap. This information is saved electronically and is protected by a password. (Id. at 15:16-21.) Customer lists and proposals created by Tuff Wrap are also confidential, saved electronically, and protected by a password. (Id. at 15:22–16:1.) All confidential information is compartmentalized and "only a handful of

people," including Campbell, have access to all of it. The estimated value based on the time, effort, and money expended to develop all confidential information is $390,000.

Tuff Wrap hired Defendant Nemelka in May 2007. Like all full-time employees, Defendant Nemelka was offered vacation time in the amount of zero days for his first year of full-time employment, five business days after his first full year of full-time employment, five business days after his second full year of full-time employment, and ten business days after his third year of full-time employment. (Doc. No. 1 at 20:3-13.) Defendant Nemelka was required to submit logs on a daily or weekly basis that described how he spent his time during work hours. (Id. at 22:13-16.) Based on these logs, Defendant Nemelka took fifty vacation days during his tenure at Tuff Wrap. (Hr'g Ex. P4.)

After Defendant Nemelka was hired, he was given access to confidential information and offered an additional week of vacation time annually as consideration for his signing the Agreement. (Id. at 20:14–15:9.) Had Defendant Nemelka not signed the Agreement, he would have been employed by Tuff Wrap as a sales representative, but he would not be eligible to work as an installer and would not have access to any confidential information. (Id. at 21:10-21.) Because he did sign the Agreement, and he worked for Tuff Wrap for more than three full years, Defendant Nemelka accrued eight work-weeks, or forty business days, of vacation time. (Hr'g Ex. P4.) He also had access to Tuff Wrap's confidential information including computerized records, photographs of projects, estimates, proposals, and customer lists. (Id. at 30:5-10.)

Tuff Wrap terminated Defendant Nemelka's employment on September 1, 2010. Shortly thereafter, Campbell discovered that Defendant Nemelka was working for an interior protection company called Cleanwrap, which had been started by his wife, Dawn Nemelka. Photographs

belonging to Tuff Wrap appeared on Cleanwrap's website. (Id. at 34:18-25.) In particular, one photograph showed a Tuff Wrap work location. The photograph was edited so that the Tuff Wrap logo was removed from the plastic material. The project was not identified as a Tuff Wrap work site. (Id. at 35:8-25.) Mr. Campbell learned that Cleanwrap was bidding on projects of Tuff Wrap customers. Further, a Google search for the terms "Tuffwrap" or "Tuff Wrap" would refer the searcher to the website of Cleanwrap as the first return.

    B.    <u>Defendant's Witness: Mark Nemelka</u>

Defendant Mark Nemelka testified that he has a background in construction. (Hr'g Tr. at 78:24-25.) He has worked as a cabinet maker and as a custom home builder. (Id. at 79:1-3.) Defendant Nemelka first became acquainted with Tuff Wrap while working as a manager for a skilled trades staffing company called CLP, in Tampa, Florida. (Id. at 78:5-20.) CLP provided temporary employees to Tuff Wrap and Defendant Nemelka managed the staffing job for CLP. (Id.) At that time, a Tuff Wrap employee informed him that a position was open at Tuff Wrap. (Id. at 80:8-20.) He applied for the job and was hired. (Id.)

On May 21, 2007, Defendant Nemelka began working for Tuff Wrap. On May 22, 2007, he signed the Agreement, although he dated the document May 21, 2007. (Id. at 82:11-25.) Before he signed the Agreement, he was told that the job offer would be rescinded if he did not sign it. (Id. at 83:7-14.) He did not negotiate the consideration for the Agreement. The document was already prepared for him to sign on his second day of work and included the additional week of vacation annually. (Id. at 83:15-21.)

During his tenure at Tuff Wrap, Defendant Nemelka said that he took two work weeks or ten business days of vacation time. (Id. at 84:25–85:4.) He cannot explain how Tuff Wrap

7

calculated that he took fifty vacation days during his three-year employment. (Id. at 85:5-9.) Defendant Nemelka recalled a September 20, 2010 letter from Tuff Wrap's counsel to his former counsel. (Id. at 89:5-16.) This letter informed Defendant Nemelka's counsel that because Defendant Nemelka had taken only two work weeks of vacation in his third full year of employment, when he was entitled to three weeks of vacation time, he would be paid for the third week. (Id.) Defendant Nemelka did receive this payment. (Id. at 85:17-24.) However, he believed that he was still owed for three weeks of unused vacation time accumulated during his employment. (Id.)

Defendant Nemelka addressed the claim of Tuff Wrap that he and Defendant Cleanwrap had bid on jobs from customers of Tuff Wrap. He confirmed that Cleanwrap bid on a job to do work for Peach State Roofing, but asserted that he did not know that this company was a Tuff Wrap customer because its headquarters were not located in the region that Defendant Nemelka covered while at Tuff Wrap. (Id. at 90:10-16.) Cleanwrap also bid on a project of a company named CentiMark. (Id. at 90:24–92:9.) Defendant Nemelka knew that "a few CentiMark offices had used Tuff Wrap services in the past but there are CentiMark offices that have never used Tuff Wrap services in the past." (Id.) He believed that the company was "decentralized" and that each office ran independently of the others. (Id.)

Regarding the photograph on the Cleanwrap website, Defendant Nemelka stated that he took photographs of a Tuff Wrap work location while he was employed with Tuff Wrap. (Id. at 101:25–103:6.) He changed one photograph by removing Tuff Wrap's logos that were displayed on the plastic barrier and used the photo on the Cleanwrap website. (Id.)

## III. STANDARD OF REVIEW

Counts One through Six of the Complaint are based on diversity of citizenship jurisdiction. When a case is based on this type of jurisdiction, the Court must apply the substantive law of the state, or in this case, Pennsylvania. Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (1938); Ford v. Exel, Inc., No. 08-cv-1735, 2008 WL 5336777, at **1-2, 2008 U.S. Dist. LEXIS 103262, at **3-4 (E.D. Pa. Dec. 17, 2008). Count Seven is brought under the Lanham Act, 15 U.S.C. § 1051. On this claim, the Court must apply federal substantive law. Pennsylvania and federal law governing the issuance of a preliminary injunction are virtually the same. A moving party must establish entitlement to a preliminary injunction by clear evidence on the merits of their claim. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).

A party may move for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. In order to obtain a preliminary injunction, the moving party must show: (1) a reasonable probability of success on the merits; (2) irreparable harm if the relief sought is not granted; (3) that the harm to the moving party outweighs the possible harm to the non-moving party; and (4) that granting relief is in the public interest. Singh v. Sch. Dist. of Phila., No. 10-2828, 2010 WL 32203366, at *6 (E.D. Pa. Aug. 11, 2010) (citing Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994)); see also Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010). "A court will issue a preliminary injunction '[o]nly if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief.'" Id. (citing Optician's Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990)).

As a form of injunctive relief, the grant of a preliminary injunction is "an extraordinary remedy," which should be granted only in "limited circumstances." Freight Co. v. C.F. Air

9

Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989) (internal quotation omitted). "Before granting a preliminary injunction, a district court must consider the extent to which the moving party will suffer irreparable harm without injunctive relief." Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009).

IV. ANALYSIS

This Court has considered the testimony of the witnesses presented by the parties and finds Plaintiff's witness, David Campbell, to be credible. Based on the testimony at the hearing, and the factors to be weighed before issuing a preliminary injunction, the Court finds that granting the Motion for a preliminary injunction is warranted at this time.[5] The Court will analyze each of the above four factors seriatim.

    A.    Reasonable Probability Of Success On The Merits

In order to succeed in a motion for a preliminary injunction, Tuff Wrap must establish a likelihood of success on the merits of the underlying claims. Miller v. Mitchell, 598 F.3d 139,

---

[5] Tuff Wrap seeks an injunction for the duration of the litigation. Defendants Nemelka and Cleanwrap argue that the injunction, if granted, should last only until the expiration date stated in the non-competition section of the Agreement, which is one year, and that it should expire on September 1, 2011. The purpose of a preliminary injunction is to maintain the *status quo* between the parties pending a final determination on the merits. See James W. Moore et al., Moore's Federal Practice § 65.20 (3d ed. 1997). The *status quo* refers to the last uncontested status, which is the relationship of the parties that precedes their controversy. Id. Here, the last uncontested status is that Defendant Nemelka agreed not to compete with Tuff Wrap for a period of one year after his termination. The record shows that during the time the non-competition section of the Agreement was in effect, Defendant Nemelka worked for a competing interior protection company. Therefore, Tuff Wrap is entitled to one-year of non-competition from Defendant Nemelka, and the Court will enjoin Defendant Nemelka from competing with Tuff Wrap for one-year from the date of the issuance of the preliminary injunction. Further, Defendant Nemelka's obligation under the Agreement prohibiting the use and dissemination of confidential information has no time limitation, and that obligation will not be effected by the one-year time-limit.

10

147 (3d Cir. 2010). "At this stage, we 'generally do[ ] not go into the merits any farther than is necessary to determine whether the moving party established a likelihood of success.'" Id. (quoting Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist., 386 F.3d 514, 524 (3d Cir. 2004)). Tuff Wrap's Complaint contains seven claims and Tuff Wrap's arguments in favor of a preliminary injunction focus on the likelihood of success on the merits of the first one, breach of contract.[6] (See Doc. 19 at pp. 2-8.) Under Pennsylvania law, the elements of breach of contract are: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). The Court finds that Tuff Wrap has established the likelihood of success in proving these elements.

       1.    *Tuff Wrap has proved that the Agreement appears to be a valid contract*

Under Pennsylvania law, a contract is formed when the parties (1) reach a mutual understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with sufficient clarity. Weavertown Transport Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. 2003). The contract at issue in this case is the Agreement, whereby Tuff Wrap promised Defendant Nemelka, among other things, one additional week of annual vacation. Defendant Nemelka promised not to compete with Tuff Wrap or to solicit Tuff Wrap clients or prospective clients for one year following his employment, and not to use or divulge any of Tuff Wrap's

---

[6] When a plaintiff moves for preliminary injunction in a matter with multiple claims, it is not necessary for the Court to assess whether the plaintiff will succeed on the merits of each claim. Rather, it is sufficient for a plaintiff to establish likelihood of success on the merits on one of the underlying claims. See Chicago Title Insurance Co. v. Lexington & Concord Search & Abstract, LLC, et al., 513 F. Supp. 2d 304, 314-19 (E.D. Pa. 2007) (granting a preliminary injunction based on a finding that plaintiff demonstrated a reasonable probability of success on the merits of one of ten alleged claims).

confidential information.

The Agreement, attached to Tuff Wrap's Complaint as Ex. "A," appears on its face to be a valid contract. Defendant Nemelka signed the Agreement. It contains a clear statement of the consideration. The terms are set forth at length in the four-page contract.

Defendant Nemelka's defense to the validity of the Agreement is that it is not valid because he did not receive the consideration promised to him. He alleges that he accrued six weeks of vacation time over his more than three-year tenure at Tuff Wrap, that he only took two weeks of vacation time, that he has been paid for one of the weeks he did not take, and that he is therefore owed compensation for three weeks of vacation time. While this argument amounts to a claim that Tuff Wrap has breached the Agreement, it does not establish that the Agreement is invalid. Tuff Wrap's promise of one additional week of vacation time annually is adequate consideration for the contract even if the actual benefit did not accrue. See Adelvision, L.P v. Groff, 859 F. Supp. 797, 804 (E.D. Pa 1994) ("[V]alid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise."). Moreover, the record shows, and Defendant Nemelka conceded, that he did not get the benefit of the annual vacation time promised to him because he chose not to use it. He testified that Tuff Wrap did not preclude him from taking the vacation time owed to him. (See Hr'g Tr. at 87:7-11.)

Further, Defendant Nemelka argues that he did not bargain for the consideration. Defendant Nemelka testified, however, that after receiving the offer of employment from Tuff Wrap, he requested an additional week of annual vacation time. (Hr'g Tr. at 81:3-20.) This is what Tuff Wrap ultimately offered as consideration for the Agreement.

12

Under these circumstances, there is a reasonable likelihood that Tuff Wrap will establish that the Agreement is a valid contract.

2. *Tuff Wrap has shown that Defendant Nemelka breached the Agreement*

It appears certain that Tuff Wrap can prove that Defendant Nemelka breached the Agreement by working for a competitor in the interior protection industry within one-year of his termination from Tuff Wrap, contacting clients of Tuff Wrap, and using confidential information belonging to Tuff Wrap. Defendant Nemelka does not deny that he began to work for Defendant Cleanwrap, a competing interior protection service, almost immediately after he was fired from Tuff Wrap. Defendant Nemelka has an ownership interest in that company (see Hr'g Tr. at 11:19-20), and his wife is the President. Defendant Nemelka also concedes that he published on the Cleanwrap website a photograph of a Tuff Wrap project. The photograph was taken by Defendant Nemelka when he was employed by Tuff Wrap. The photograph belongs to Tuff Wrap and contains the type of confidential information that Defendant Nemelka promised to refrain from using or disseminating. Finally, Tuff Wrap can prove that Defendants Nemelka and Cleanwrap contacted, solicited, and attempted to do business with companies that they knew to be customers of Tuff Wrap.[7] Defendant Nemelka admitted to bidding on jobs for Peach State Roofing and Centimark, both of which are Tuff Wrap clients. (Hr'g Tr. at 11:15-20, 90:10-16, 90:24-92:9.) Although Defendant Nemelka offered an explanation to justify his contacts with Tuff Wrap clients, they do not justify the conduct of Defendants. Based on these facts, it is likely that Tuff Wrap will succeed in showing that Defendant Nemelka breached the Agreement.

---

[7] Mr. Campbell also testified that bid proposals used by Cleanwrap to solicit Tuff Wrap customers were created with Tuff Wrap confidential information and were almost verbatim copies of bid proposals used by Tuff Wrap. (Hr'g Tr. at 43:6-24.)

3. *Tuff Wrap was injured by Defendant Nemelka's breach*

It also appears certain that Tuff Wrap can establish that it was injured by Defendant Nemelka's, and concomitantly Defendant Cleanwrap's, breach of the Agreement. Because there was interference with its customer relationships, Tuff Wrap suffered a loss of its competitive advantage and damage to its reputation in the interior protection industry. These are legitimate business interests that constitute a cognizable injury for breach of contract. See Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998).[8]

B. Irreparable Harm If The Relief Sought Is Not Granted

"The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Froge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000). This is a heavy burden. Id. Monetary loss alone is insufficient to show irreparable harm. Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 562 F.3d 553, 557 (3d Cir. 2009). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998).

---

[8] Defendant Nemelka also makes the argument that Tuff Wrap would not be able to succeed on the merits because the non-competition section of the Agreement is unenforceable. There is no evidence at this point to indicate that the non-competition agreement is unenforceable. A covenant not to compete is enforceable if: "(1) the covenant relate[s] to . . . a contract for employment; (2) the covenant [is] supported by adequate consideration; and (3) the application of the covenant [is] reasonably limited in both time and territory." Maaco Franchising, Inc. v. Auqustin, No. 09-4548, 2010 WL 1644278, at *3 (E.D. Pa. Apr. 20, 2010) (quoting Piercing Pagoda, Inc. v. Hoffner, 351 A.2d 207, 210 (Pa.1976)). Here, the first element is met because the covenant relates to Defendant Nemelka's employment with Tuff Wrap (although he was an at-will employee and did not have a full employment contract). The second element is satisfied because, as the Court has already found, Tuff Wrap is likely to establish that the Agreement was supported by adequate consideration. Finally, the third element is met because an agreement not to compete for one-year after termination is reasonable.

"In covenant not to compete cases, the 'nature of the right that is injured,' i.e. the former employer's legitimate interest in protecting its business, makes equitable relief appropriate." Quaker Chemical v. Varga, 509 F. Supp. 2d 469, 478 (E.D. Pa. 2007) (quoting Nat'l Bus. Servs., Inc. V. Wright, 2 F. Supp. 2d 701, 709 (E.D. Pa. 1998). "An employer has a legitimate interest in preventing an employee from leaving to work for a competitor, carrying with him the employer's goodwill, specialized training, and confidential conformation." Id. "[I]nterests that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills." Similarly, not allowing competitors to profit from an employer's specialized training and skill is a legitimate use of a covenant. Id. (citing Victaulic C. v. Tieman, 499 F.3d 227, 235 (3d Cir. 2007)).

In Quaker, the court addressed a situation similar to the case at bar. There, an employee, Varga, left Quaker and shortly thereafter began to work for a competitor, Stuart, despite having signed an agreement with Quaker agreeing not to disclose Quaker's trade secrets and not to compete with Quaker for a period of one year after leaving Quaker's employ. See Quaker, 509 F. Supp. 2d at 472-73. The court found that Varga had extensive knowledge of Quaker's confidential information, including trade secrets and specific information regarding customers, both current and potential. Id. at 479. Based on this knowledge, the court found that the employee had a "very real opportunity to harm Quaker's legitimate business interest by working for Stuart, and thus, Quaker will likely suffer irreparable harm if Varga is allowed to work for Stuart." Id.

The same reasoning applies in this case. Here, the record establishes that Defendant Nemelka has extensive knowledge of Tuff Wrap's confidential information including how to

perform "the Tuff Wrap," and information regarding current and potential customers and project proposals.⁹ If Defendant Nemelka is permitted to work for Cleanwrap, he will have a real opportunity to harm Tuff Wrap's legitimate business interests. Likewise, if Defendant Cleanwrap is permitted to use or disseminate any confidential information obtained from Defendant Nemelka, Tuff Wrap will likely suffer irreparable harm. Once confidential information has been disseminated, it cannot be retracted. One cannot unring the bell.

In light of the foregoing, the Court finds that Plaintiff will suffer irreparable harm if the relief sought is not granted. This factor favors granting injunctive relief to Plaintiff.

        C.      <u>Harm To Plaintiff Outweighs Possible Harm To Defendants</u>

The Court also finds that the harm to Plaintiff that would result if the Court does not enjoin Defendants from using and disseminating Plaintiff's confidential information, <u>see</u> section B. *supra*, outweighs any harm that may befall Defendants. Defendant Nemelka knew that he had signed the Agreement preventing him from working for a competitor for one year after leaving Tuff Wrap, which also prevented him from having contact with clients of Tuff Wrap and using confidential information.¹⁰ He was aware of the potential harm that could befall him when he began to work for a competitor. Moreover, because the founder and president of Defendant Cleanwrap is Defendant Nemelka's spouse, and he appears to be a key employee of the company

---

    ⁹      The record also establishes that Defendant Nemelka possessed photographs of at least one Tuff Wrap work location.

    ¹⁰     The record establishes that Defendant Nemelka only began to assert that the Agreement was invalid after the litigation began. At no point during his three years of employment did he question the validity of the Agreement. Moreover, despite his current claim that the Agreement is unenforceable, Defendant Nemelka testified that he was aware of his obligation not to compete and that he took steps to ensure that Defendant Cleanwrap did not solicit Tuff Wrap clients. His efforts however, are unconvincing.

with knowledge of the interior protection business, it is reasonable to find, through this employee, the corporate defendant was aware of the Agreement and was also aware of any potential harm. "[T]he harm to [D]efendants is of their own making." Rita's Water Ice Franchise Corp. v. DBI Inv. Corp., No 96-306, 1996 WL 165518, at *5 (E.D. Pa. Apr. 8, 1996). Accordingly, this factor favors a grant of injunctive relief to Plaintiff.

      D.      <u>Granting Relief Is In The Public Interest</u>

Although not the primary concern in the instant case, it is in the public interest for courts to uphold the "inviolability of trade secrets and enforceability of confidentiality agreements." Bimbo Bakeries, 613 F. 3d at 119. Allowing an employee to violate a covenant such as Defendant Nemelka has done would encourage other employees to violate their covenants. "Restrictive covenants only have value if they are enforced." See Quaker, 409 F. Supp. 2d at 481 (citing Graphic Mgmt. Assocs.v. Hatt, No. 97-6961, 1998 WL 159035, at *17 (E.D. Pa. Mar. 18 1998). Therefore, the public interest is served by granting Plaintiff injunctive relief in this case.

      E.      <u>Injunction Bond</u>

In accordance with Federal Rule of Civil Procedure 65(c), the Court will require Plaintiff to post an injunction bond in the amount of $10,000. This amount is required to cover damages Defendants may suffer if they have been wrongfully enjoined.

**V.    CONCLUSION**

Since Plaintiff has shown a likelihood of success on the breach of contract claim, that irreparable harm will result if the relief sought is not granted, that the harm it faces outweighs the possible harm to Defendants, and that granting injunctive relief is in the public interest, the Court will grant Plaintiff's Request for a Preliminary Injunction (Doc. No. 2). For a period of one year

commencing on the date of this Opinion and corresponding Order, Defendant Nemelka will be enjoined from working for Defendant Cleanwrap and any other company providing interior protection services.  Moreover, Defendant Nemelka shall be enjoined from contacting, soliciting, or doing business with any customer or prospective customer of Tuff Wrap.  In accordance with Section 1 of the Agreement, Defendant Nemelka shall be enjoined from using or disseminating any of Tuff Wrap's confidential information and Defendant Cleanwrap shall be enjoined from using in any way, confidential information provided to it by Defendant Nemelka, including but not limited to, information regarding customers or prospective customers of Tuff Wrap.

      An appropriate Order follows.